IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

GAIL SALMONS,
o/b/o L.R.S.,

    Plaintiff,

v.                                                  Civil Action No. 2:12-cv-06296

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for child's Supplemental Security Income (hereinafter SSI) under Title XVI of the Social Security Act.

    Plaintiff, L.R. Salmons (hereinafter Claimant), through his mother, Gail Salmons, filed an application on behalf of her son, for children's SSI benefits on May 18, 2009. The application alleged a disability onset date of November 1, 1999, due to Attention Deficit Hyperactivity Disorder (hereinafter ADHD). The claim was denied initially on September 28, 2009, and upon reconsideration on May 7, 2010. (Tr. at 75-78, 84-86). On June 9, 2010, Claimant requested a hearing before an Administrative Law Judge (hereinafter ALJ). The hearing was held on January 4, 2011, in Charleston, West Virginia. Claimant and his mother appeared. Claimant's mother testified (Tr. at 27-44). By decision dated April 13, 2011, the ALJ determined that Claimant was not entitled to benefits (Tr. at 21). The ALJ's decision became the final decision of the Commissioner on August 9, 2012, when the Appeals Council denied Claimant's request for review (Tr.

at 1-4). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a) (2012). A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Under the regulations, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2012). If the child is, he or she is found not disabled. *Id.* § 416.924(a). If the child is not, the second inquiry is whether the child has a severe impairment. *Id.* § 416.924(c). An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* If the child does not have a severe medically determinable severe impairment or combination of impairments, he is not disabled. If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 416.924(d). If the claimant's impairment meets or functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. *Id.* § 416.924(d)(1). If it does not, the claimant is found not disabled. *Id.* § 416.924(d)(2). Other applicable rules are found at §§ 416.924a, 416.924b, and 416.929.

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 13). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of attention deficit hyperactivity disorder, opposition defiant disorder, depression and anxiety. (*Id.*) At the third and final inquiry, the ALJ concluded that Claimant's impairments do not meet or functionally equal the level of severity of any listing in Appendix 1. On this basis, benefits were denied (Tr. at 21).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born November 16, 1994; thus he was fourteen years old on the onset date, sixteen at the time of the administrative hearing, and sixteen when benefits were denied by the ALJ (Tr. at 37).

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as it relates to Claimant's arguments.

Claimant's Challenges to the ALJ's Decision

Claimant asserts that the ALJ's decision is not supported by substantial evidence because the ALJ incorrectly concluded that Claimant's functional limitations with respect to attending and completing tasks were less than marked (ECF No. 14). Defendant asserts substantial evidence supports the ALJ's finding that Claimant did not have a marked limitation in attending and completing tasks and therefore, he was not disabled under the Social Security Act (ECF No. 15).

Attention Deficit Hyperactivity Disorder

ADHD, Listing 112.11, is manifested by developmentally inappropriate degrees of inattention, impulsiveness and hyperactivity. The required level of severity for ADHD is met when the claimant's medically documented findings demonstrate marked inattention, marked impulsiveness and marked hyperactivity.

Functional Equivalence

The regulations provide that if a claimant's impairments do not meet or equal the Listings, the Commissioner will assess all functional limitations caused by claimant's impairments. 20 C.F.R. § 416.926a(a) (2012). To qualify for benefits under the functional equivalence analysis, out of the six domains, Claimant must have marked

4

limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(b). The six domains are:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and
6. Health and physical well-being.

The Court must look at the information in the case record to determine how claimant's functioning is affected during all of his activities when the Court decides whether an impairment or combination of impairments functionally equals the Listings. Claimant's activities are everything he does at home, at school and in his community. *See* SSR09-1p: Determining Childhood Disability Under the Functional Equivalence Rule – The "Whole Child" Approach.

"Marked" and "extreme" are defined in § 416.926a(e), as:

> *Marked limitation.* (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

> *Extreme limitation.* (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme"

5

> limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.

Claimant asserts that he agrees with the ALJ with respect to the following domains: acquiring and using information, interacting and relating with others, moving about and manipulating objects, caring for himself and health and physical well-being (ECF No. 14). Claimant asserts that in the domain of attending and completing tasks, his limitations were marked. Claimant argues that the ALJ failed in evaluating the number of activities that were limited, the importance of the limited activities and the frequency of these activities and their limitations. He contends that the ALJ erred in relying "heavily" on the assessment of his special education teacher, Monique Bucklen.

The ALJ asserts that Claimant's mother reported that his efforts were directed at "clowning around" instead of paying attention. Both Claimant and his mother reported that he accomplished a number of activities on a regular basis, illustrating that his functionality was not so impaired that he met a Listing criteria and satisfied the high threshold for childhood disability.

The domain of attending and completing tasks addresses how well a person is able to focus and maintain attention, and how well he is able to begin, carry through and finish activities, including the mental pace at which he performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h). Specific examples are provided:

> (1) *General.* (i) Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.

> (ii) Adequate attention is needed to maintain physical and mental effort and concentration on an activity or task. Adequate attention permits you to think and reflect before starting or deciding to stop an activity. In other words, you are able to look ahead and predict the possible outcomes of your actions before you act. Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate time-frame.
> ...
> (3) Examples of limited functioning in attending and completing tasks.
> (i) You are easily startled, distracted or over reactive to sounds, sights, movements or touch.
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
> (v) You require extra supervision to keep you engaged in an activity.

§ 416.926a(h)(3).

On May 13, 2004, Claimant's third grade Individualized Education Program reported that his hobbies included drawing, playing outside with cousins and playing on his PlayStation2 (Tr. at 389). His strength in competency areas included "attention to detail" and persistence in work habits/skills (Tr. at 390).

On October 27, 2008, Claimant's eighth grade Individualized Education Program (hereinafter IEP) reported that his math teacher cannot assess his math abilities because he refuses to do anything in the classroom (Tr. at 185). The IEP placed Claimant in the general education environment 89% of the time and in special education environment 11% of the time (Tr. at 190).

Claimant's application dated May 18, 2009, reported that he takes care of his personal hygiene, washes and puts away his clothes, helps around the house, gets to school on time and uses public transportation by himself (Tr. at 118).

Mareda L. Reynolds, M.A., P.L.L.C., performed a Mental Status Examination on July 20, 2009 (Tr. at 416-421). This Mental Status Examination was conducted approximately two months after Ms. Salmons filed a disability application on behalf of Claimant. At the time of the examination, Claimant was 14 years old. Examination observations stated that Claimant's grooming and hygiene were adequate and that he was cooperative during the examination. Claimant's household chores included cleaning his bedroom and his "band room," washing dishes, taking out the trash and trimming weeds (Tr. at 420). Claimant visits friends and has visitors in his home. He frequently goes out into the community. His hobbies included playing guitar, drawing, flying remote control planes and skateboarding. Psychologist Reynolds's prognosis of Claimant was "fair" (Tr. at 421).

On August 24, 2009, Claimant's Individualized Education Program reported that he was "returning to school from homebound" (Tr. at 252). While on homebound, he made a C in math, B in science, C in english and B in West Virginia Studies. Claimant's "teacher reported that he was very creative and polite." (*Id.*) The Individualized Education Program demonstrated that "the regular educator reports that [he] rarely starts or completes assignments. He lacks motivation but is capable of doing much better work. He focuses on getting out of work instead of completing work."

On September 25, 2009, James Binder, M.D., completed a Childhood Disability Evaluation Form which found that Claimant's impairment or combination of impairments were severe, but did not meet, medically equal or functionally equal the Listings. Dr. Binder considered Claimant's functional equivalence and found his limitation in the domain of attending and completing tasks to be less than marked (Tr.

8

at 450). Dr. Binder pointed out that on Claimant's IEP, his teacher noted that he was capable of learning the material if he applied himself. (*Id.*)

On March 15, 2010, Monique Bucklen, Claimant's special education teacher, completed a teacher questionnaire assessing his abilities in her class (Tr. at 146-153). Ms. Bucklen reported that Claimant refused to participate in math class (Tr. at 147). Ms. Bucklen noted during an assessment that Claimant was capable of performing well in school, but instead focused on his large social circle (Tr. at 211).

On September 23, 2010, Frank Roman, Ed.D., completed a Childhood Disability Evaluation Form which found that Claimant's impairment or combination of impairments were severe, but did not meet, medically equal or functionally equal the Listings (Tr. at 494). Mr. Roman considered Claimant's functional equivalence and found his limitation in the domain of attending and completing tasks to be less than marked (Tr. at 496). Mr. Roman pointed out that Claimant lacks motivation and is capable but unwilling. (*Id.*)

The ALJ's decision references Ms. Bucklen's observations when addressing the functional equivalence domain of attending and completing tasks (Tr. at 16-17). The ALJ reported that he considered all of the relevant evidence in the case record. "All the relevant evidence" specifically included objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members or friends; the claimant's statements; and any other relevant evidence in the case record, including how the claimant functions over time and in all settings. Further the ALJ states that he gave great weight to the reviewing opinions of State agency physician, Dr. Binder, and State agency psychiatrist, Mr. Roman, because they

were consistent with the medical record in its entirety.  As such, the Court finds that the ALJ's decision is substantially supported by the evidence of the record.

Conclusion

The Court finds that the ALJ properly evaluated the evidence of record in keeping with the applicable regulation related to review of childhood disability. Claimant did not meet any of the listings, and as a result, his case turned on whether he could show functional equivalence to a listed impairment.  To qualify for benefits under the functional equivalence analysis, Claimant must have demonstrated marked limitations in two domains of functioning or an extreme limitation in one domain.  20 C.F.R. § 416.926a(a).

The ALJ's finding that Claimant's impairments do not functionally meet or equal the Listings is supported by substantial evidence.  In particular, substantial evidence supports the ALJ's determination that Claimant has less than marked limitation in the domain of attending and completing tasks.  The ALJ's findings are supported by the above-cited evidence of record, including evidence from Claimant's teachers, treating medical sources, consulting physicians and psychiatrists, and the testimony of Claimant's mother.  The evidence of record substantially supports the ALJ's determination that Claimant was not disabled under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter: March 20, 2014.**

                                      Dwane L. Tinsley
                                      United States Magistrate Judge